IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00464-PAB-KMT

JACQULYN MORTON,

     Plaintiff,

v.

INTEGRITY MOTORS INC. d/b/a McDONALD AUTOMOTIVE GROUP,

     Defendant.

---

## ORDER

---

This matter is before the Court on Plaintiff's Motion to Reopen and Reinstate Case [Docket No. 12] filed by plaintiff Jacqulyn Morton.

## I. BACKGROUND

Plaintiff filed this case in the District Court for Broomfield County, Colorado, alleging that defendant Integrity Motors Inc., doing business as McDonald Automotive Group, violated state and federal law in connection with the sale of a car to plaintiff. Docket No. 1-1 at 2-6.  Specifically, plaintiff alleges that defendant is liable for Civil Theft under Colo. Rev. Stat. § 18-4-405; a violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-708(1)(a)(I); and a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.  Docket No. 1-1 at 5-6.  Plaintiff seeks damages in the amount of three times the value of the car that she alleges defendant is wrongfully holding, actual damages, statutory damages, and attorney's fees and costs.

Docket No. 3 at 6.  Defendant removed the case to this Court on February 21, 2013.

Docket No. 1.

On February 27, 2013, defendant moved the Court to stay this case and compel

arbitration, pursuant to the Motor Vehicle Sales Agreement (the "Agreement") executed

by plaintiff.  Docket No. 7.  The Agreement states in pertinent part:

> Any controversy, claim or dispute ("Disputes") between [Plaintiff] and
> [Defendant] or [Defendant]'s employees, agents or representatives which
> arise out of or relate in any way to the purchase of products and/or services
> from [Defendant] including, but not limited to, the financing of this
> transaction, shall be resolved in a Colorado small claims court . . . . Any
> Disputes which involve amounts which exceed the jurisdiction of the small
> claims court shall be resolved by binding arbitration and not by court action.
> Binding arbitration shall be before a single arbitrator in Denver, Colorado on
> an individual basis and not as a class action.  The single arbitrator shall be
> appointed by the Denver/Boulder Better Business Bureau ("BBB") in
> accordance with the Binding Arbitration Rules of the BBB.  If the BBB is
> unable to appoint an arbitrator for any reason, the parties shall agree to use
> the procedures of the American Arbitration Association for the arbitration.

Docket No. 7-1 at 3.  Defendant requested that the Court "compel arbitration in this

matter and immediately stay these proceedings pending . . . arbitration."  Docket No. 7

at 7.  On March 20, 2013, plaintiff filed a response, stating that she "hereby confesses

the Motion filed by Defendant and request[s] this matter be administratively closed

pending arbitration."  Docket No. 10 at 1.  On April 19, 2013, the Court granted in part

defendant's motion to compel arbitration and administratively closed the case, subject

to reopening for good cause pursuant to D.C.COLO.LCivR 41.2.  Docket No. 11 at 2.

The Court ordered the parties to "proceed to binding arbitration in a manner consistent

with the agreement attached to the motion to compel arbitration."  *Id*.

The BBB Rules provide that an arbitrator may not award legal fees or punitive

damages "unless it is specifically agreed by all parties that the arbitrator may award

2

them." Docket No. 12-1 at 8. The American Arbitration Association ("AAA") Rules do not contain these limitations on available awards. *See* www.adr.org (click on Rules & Procedures, then Rules, then Commercial Arbitration Rules and Mediation Procedures). On April 1, 2013, plaintiff contacted defendant and requested that defendant agree to allow a BBB arbitrator to award punitive damages and legal fees or, in the alternative, agree to arbitrate before the AAA. Docket No. 12-2 at 4. Defendant stated that it would do neither, maintaining that arbitration before the BBB was required by the Court's April 19, 2013 Order. Docket No. 12-2 at 1-3.

On June 4, 2013, plaintiff filed the instant motion requesting that the Court reopen and reinstate the case. Docket No. 12. Defendant opposes the motion. Docket No. 13.

## II. ANALYSIS

The Federal Arbitration Act ("FAA") evinces "a liberal federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)). Accordingly, a court considering a motion to compel arbitration pursuant to an arbitration agreement need only consider two threshold questions: (1) did the parties agree to arbitrate the dispute at issue? and (2) are there "legal constraints external to the parties' agreement [that] foreclose[] the arbitration of those claims"? *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000). Federal courts may adjudicate challenges to the validity of an arbitration clause considered separately from the rest of the contract, but claims and defenses based on the validity of the contract as a whole fall

3

within the purview of the arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).  Likewise, procedural questions, such as whether a condition precedent to arbitration has been met, are presumptively for the arbitrator to decide, while issues of substantive arbitrability are generally committed to a judge unless otherwise specified in the agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002).  When a court determines that an arbitration agreement is enforceable, it must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed."  9 U.S.C. § 5.

An agreement to arbitrate federal statutory claims is generally enforceable in the absence of a "contrary congressional command." *Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) (internal citations omitted).  The Supreme Court has recognized an exception to this general rule where a prospective litigant is unable to "effectively . . . vindicate its statutory cause of action in the arbitral forum." *Mitsubishi*, 473 U.S. at 637.  In other words, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id*. at 628, 637 n.19 ("We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."); *see also Am. Express Co.*, 133 S. Ct. at 2310 (stating that the

4

"effective vindication" exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights"); *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) ("we conclude that the award of treble damages under the federal antitrust statutes cannot be waived"); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) (holding unenforceable a contractual provision restricting an arbitrator's ability to award punitive damages on a Title VII claim); *Paladino v. Avnet Computer Tech., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) ("When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable."); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1247 (9th Cir. 1994) ("the fact that franchisees may agree to an arbitral forum for the resolution of statutory disputes in no way suggests that they may be forced by those with dominant economic power to surrender the statutorily-mandated rights and benefits that Congress intended them to possess").

Furthermore, an arbitration provision may be found invalid "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In Colorado, unconscionability is grounds for voiding a contract or contractual provision. *See, e.g.*, *Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 300 P.3d 963, 968 (Colo. App. 2012).  A finding of unconscionability requires "evidence of some overreaching on the part of one of the parties . . . together with contract terms which are unreasonably favorable to that party."  *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986); *see also Vernon v. Qwest Communications Int'l, Inc.*, 857 F. Supp. 2d 1135, 1157 (D. Colo. 2012) ("substantive unconscionability might be demonstrated where there is an

5

'absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated' or where the terms of the contract suggest a lack of 'substantive fairness'") (internal citations omitted).   "It is a long-standing principle of contract law that a contractual provision is void if the interest in enforcing the provision is clearly outweighed by a contrary public policy." *F.D.I.C. v. Am. Cas. Co. of Reading, Pa.*, 843 P.2d 1285, 1290 (Colo. 1992); Restatement (Second) of Contracts § 178 (1981).   "[N]umerous Colorado appellate decisions have held that a contract provision relieving a party from liability for its own willful and wanton conduct is against public policy." *Core-Mark Midcontinent, Inc.*, 300 P.3d at 971.

Attorney's fees and exemplary damages serve the core policy goals of TILA and the CCPA by deterring misconduct and facilitating private enforcement of claims that might otherwise go unresolved.   *See, e.g.*, *Hall v. Walter*, 969 P.2d 224, 232 (Colo. 1998) ("The availability of treble damages and attorney fees serves the CCPA's punitive and deterrent purposes" and is "intended to promote private enforcement."). *Hannon v. Sec. Nat'l Bank*, 537 F.2d 327, 329 n.1 (9th Cir. 1976) ("where the assistance of an attorney is a practical necessity, Congress did not intend that vindication of the rights guaranteed by statute depend on the plaintiff's having economic resources to retain an attorney or else being compelled to seek out charitable assistance").   TILA was "specifically designed by Congress to be enforced through private citizen suits," providing a rational basis for the "legislative distinction [] drawn between attorneys' fee awards to successful plaintiffs but not successful defendants." *Postow v. OBA Federal Savings & Loan Ass'n*, 627 F.2d 1370, 1387-88 (D.C. Cir. 1980).   It is widely recognized

that, without the possibility of recovering attorney's fees, many consumers would be unable to obtain legal representation. *See, e.g.*, *Mercantile Adjustment Bureau, LLC v. Flood*, 278 P.3d 348, 359 (Colo. 2012) (Coats, J., dissenting) ("In this country, . . . we have long accepted . . . specific fee-shifting provisions[] as techniques for providing greater access to the courts and encouraging the private enforcement of various rights and regulations."); *Johnson v. City of Tulsa, Okla.*, 489 F.3d 1089, 1103 (10th Cir. 2007) ("Congress enacted § 1988 to 'ensure effective access to the judicial process for persons with civil rights grievances,' the rationale being that individuals are more likely to seek redress if they have the possibility of recovering their attorney fees.") (internal citations omitted); *Oshana v. Coca-Cola Co.*, 487 F. Supp. 2d 961, 967 (N.D. Ill. 2007) ("The purpose of the fee-shifting provision of the Consumer Fraud Act is to encourage plaintiffs who have a cause of action to sue, even if [monetary] recovery would be small.").

However, a party may waive her right to argue that a contract is void as against public policy by failing to timely raise it. *Abbott v. Law Office of Patrick J. Mulligan*, 440 F. App'x 612, 623 (10th Cir. 2011) (argument waived on appeal where litigant did not raise it before the district court until he filed a motion to reconsider under Federal Rule of Civil Procedure 59(e)). The court in *Abbott* recognized that courts frequently decline to enforce contracts that are illegal or facially void. *Id.* (listing cases). However, the court found "no Supreme Court or Tenth Circuit precedent insulating a public policy argument from waiver." *Id.* at 624 (citing *Wilburn v. Mid-South Health Development, Inc.*, 343 F.3d 1274, 1280-81 (10th Cir. 2003) (plaintiff waived argument that contract

was void as against the policy goals embodied in the Residential Care Act by failing to raise it before district court); *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 330 F.3d 747, 752 n.4 (6th Cir. 2003) (finding merit in the argument that the Postal Service "waived its public policy challenge to the arbitration award by failing to raise it during arbitration"); *Reliance Nat'l Ins. Co. v. Imber*, 1999 WL 510752, at *1 n.2 (7th Cir. Jul. 14, 1999) (defendants waived argument that insurance contract provision was void as against public policy by failing to raise it in their opening brief)).

*Abbott* concerned a lawsuit between two attorneys over the terms of their Attorney Association Agreement.  440 F. App'x at 614.  After litigating in the district court for almost a year, the plaintiff filed a motion to compel arbitration under the agreement.  *Id*.  The plaintiff argued that, if the arbitration panel found that the agreement was an exclusive referral contract, it would be void as against the Utah Rules of Professional Conduct.  *Id*.  The panel rejected the plaintiff's argument and awarded the defendant seven million dollars in unpaid fees.  *Id*. at 615.  The plaintiff moved to vacate the arbitration award, but did not raise his public policy argument before the district court.  *Id*. at 616.  On appeal, the court held that the plaintiff had waived this argument.  *Id*. at 623-24.

Contract construction is a matter of law.  *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (1994).  The primary goal in construing a contract is to "give effect to the intention of the parties."  *Town of Minturn v. Tucker*, 293 P.3d 581, 590 (Colo. 2013).  "Whenever possible, this intent should be ascertained from the plain language of the policy alone."  *Mid-Century Ins. Co. v. Robles*, 271 P.3d 592, 594 (Colo. App. 2011).  Courts construe

8

undefined terms according to their "plain meaning, avoiding strained and technical interpretations." *Fire Ins. Exchange v. Sullivan*, 224 P.3d 348, 351 (Colo. App. 2009).

Defendant argues that plaintiff agreed to submit to arbitration before the BBB when she confessed defendant's Motion to Stay and Compel Arbitration. Docket No. 13 at 5-7. Plaintiff argues that the Agreement "on its face is not unconscionable" because it includes a "contingency" providing the parties with an alternative forum if the BBB is unable to appoint an arbitrator. Docket No. 14 at 3-4. Plaintiff argues that the BBB is "unable to appoint an arbitrator to resolve Plaintiff's claims for remedial damages and attorney fees" and, thus, that "under the terms of the arbitration agreement, Plaintiff [has] an alternative neutral forum through which she [can] seek redress of her statutory claims." *Id*. Plaintiff contends that defendant's refusal to waive the BBB's limitations on remedies rendered the "contingency" in the arbitration agreement "illusory." *Id*. at 4. Plaintiff concedes, however, that, if the "BBB was the sole arbiter[,] Defendant's waiver argument would have legs." *Id*. at 3.

Plaintiff's interpretation of the contract is strained. The plain meaning of the clause indicates a clear intention to arbitrate before the BBB unless something interferes with the BBB's ability to appoint an arbitrator. *See Fire Ins. Exchange*, 224 P.3d at 351. Here, there is nothing preventing the BBB from appointing an arbitrator. The plain language of the Agreement thus limits plaintiff's ability to recover certain statutory remedies. Ordinarily, a contract provision of this sort would raise serious questions. *See Mitsubishi*, 473 U.S. at 637 n.19. However, in this case, the Court need not address these questions because it finds that plaintiff waived the argument that the

9

provision is void or unconscionable when she confessed the motion to compel.  *See Abbott*, 440 F. App'x at 623; *Pac. West Grp., Inc. v. Real Time Solutions, Inc.*, 321 F. App'x 566, 568 (9th Cir. 2008) ("Pacific West has waived any unconscionability arguments regarding the warranty-waiver provision by failing to raise the issue either in the complaint or in the briefing before the district court.").

In addition, plaintiff does not state that she was unable to challenge the validity of the Agreement in response to the motion to compel.  *See generally*, Docket Nos. 12 and 14.  Rather, she argues that, when she confessed the motion to compel, she did not know that defendant "would not waive the BBB's limitations of remedies" or that defendant "would not arbitrate with the AAA."  Docket No. 14 at 2.  These statements suggest that plaintiff considered the implications of the arbitration clause, but chose to negotiate with defendant instead of challenging the clause's validity before the Court. *See Abbott*, 440 F. App'x at 623.  In making that decision, she waived the right to raise these arguments at a later date.  Accordingly, there is no basis for reopening the case.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion to Reopen and Reinstate Case [Docket No. 12] filed by plaintiff Jacqulyn Morton is DENIED.

DATED February 26, 2014.

BY THE COURT:

 s/Philip A. Brimmer                              
PHILIP A. BRIMMER
United States District Judge